STEVEN CRAIG SHULL, a Minor, by his Father and Next Friend, John R. Shull, *et al.*, Plaintiffs-Appellants, v. HARRISTOWN TOWNSHIP, Defendant-Appellee.

Fourth District   No. 4—91—0449

Opinion filed January 16, 1992.

Willoughby & Latshaw, P.C., of Decatur (K. Michael Latshaw, of counsel), for appellants.

Evan H. Johnson, of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On May 4, 1987, plaintiff, eight-year-old Steven Craig Shull, injured his hand while swinging on a sliding gate of a fence surrounding defendant Harristown Township's storage yard. Plaintiff's father, John R. Shull, Sr., filed suit on behalf of his son, and individually, to recover damages allegedly incurred from the injury. Harristown Township filed a motion for summary judgment. The Macon County circuit court granted its motion on June 12, 1991. Plaintiffs appeal, arguing summary judgment in favor of defendant was improper. We disagree and affirm.

When the accident occurred, Steven was eight years old, but would reach age nine on July 23, 1987. Steven's father, John R. Shull, Sr., filed a four-count complaint on behalf of Steven and individually. Plaintiffs later sought, and received, a voluntary dismissal of counts II and IV, which were pleaded against an additional party. The remaining counts were directed against defendant Harristown Township. Count I sought damages for Steven's personal injury, and was brought on behalf of Steven by his father. Count III was brought by Steven's father as plaintiff, individually, and sought compensation for Steven's medical expenses. Both counts alleged Harristown Township knew or should have known children would, and did, play in the yard and on the gate. Each count also alleged the gate constituted an unreasonably dangerous condition, defendant had actual or constructive notice of the unreasonably dangerous structure and sufficient time to remedy the condition before May 4, 1987. In addition, each count also alleged defendant was negligent by not keeping the metal gate locked or securing it to prevent persons from being injured. Steven, his parents, and the highway township commissioner were orally deposed.

During his deposition, Steven stated that on May 4, at approximately 4:30 p.m., he, his 10-year-old brother, and an 8-year-old friend went to play on a rock pile in Harristown Township's storage yard. Paul McKinney, the township's highway commissioner, was in charge

of the yard. He testified the property was surrounded by a chain link fence. The gate was closed or padlocked only when McKinney was on vacation or when privately owned equipment was stored in the yard. He described the gate as a 16-foot rolling gate which slides horizontally.

The highway commission stored piles of rocks, culverts, and equipment in the yard. The township stored trucks, loaders, cinder spreaders, and snowplows in the yard. There was also a diesel and a gasoline gas tank in the yard. Mr. McKinney testified the fence and gate were erected approximately eight years ago to establish property lines. He conceded it was also built to keep people out of the yard. However, before the fence enclosed the yard, there were no problems with children playing in the yard, theft, or vandalism.

Steven's parents had told him to stay away from the township property. They feared he could be hurt by playing with matches around the gas stored there, or he might damage something. On the day Steven was injured, his father specifically told him not to go to the yard. Steven, his brother, and his friend had played on the rock pile four or five times within the previous month and a half before May 4. Steven testified that on one of the earlier occasions, they saw a man enter the township property in a truck. Steven said the man saw them playing on the rock pile, but said nothing to them. During the other times they played there, no one else was on the property.

McKinney testified he saw two children playing on a rock pile in the yard a few weeks before Steven's injury. He told them to leave the yard and never return. Although he did not know how old the children were, he stated they were "too small to be playing out there by themsel[ves]." Other than this occurrence, Mr. McKinney knew of no other occasion when children played in the yard, and did not know children played on the gate. He also did not know Steven and his friends were playing on the gate on May 4, 1987, until he later learned about Steven's injury.

Steven's father testified he frequently saw children playing on defendant's rock piles on nice days. He knew of no instance, however, of children playing on the gate on which his son was injured. Steven's mother, Glenna M. Shull, also testified she saw children playing on the rock piles. However, she noticed these children after the workday ended for Harristown employees. Both parents also testified they saw children playing within the yard during township trustee meetings which occurred in a building in the yard. Although within the last three to four years McKinney had not attended many township meetings, he stated he never saw children playing in the yard during meet-

ings which he attended. Shull also testified that when he spoke with McKinney after Steven was injured, McKinney said he knew children were playing on the rock piles, but he did not think anyone would get hurt.

Steven testified that on May 4, he, his brother, and their friend played on the rock pile for about 45 minutes, and then started playing on the gate. Although they had not played on the gate before, they agreed it was a good idea. One or more of the children would stand on the gate, and the other one or two would push it. Steven rode the gate this way five or six times before his hand was injured. While being pushed, a roller supporting the gate ran over Steven's hand. He knew the rollers were there. The two rollers were in a stationary position and he thought both rollers had already passed. During other times he was being pushed, he would raise his hand from the gate as it approached a roller, and when the roller passed, he would put his hand back on the gate. Steven stated he removed his hand in this way because he knew if he did not do so, "it would roll right over [his] hand" and hurt him. McKinney and Steven both stated the gate was not defective when Steven was injured.

On June 12, 1991, the court considered the complaint, answer, and depositions, and granted summary judgment to Harristown Township. It found there was no evidence sufficient to raise a triable issue of fact about whether a dangerous condition existed on the township's property which was likely to injure children of Steven's age and maturity because they could not comprehend the risk of the condition involved. The court dismissed plaintiffs' complaint with prejudice, and noted a written order would not be filed.

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005; *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34, 564 N.E.2d 778, 780; *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 164, 540 N.E.2d 895, 900.) Because it is a drastic means of disposing of litigation, summary judgment should be granted only when the "right of the moving party is clear and free from doubt." *Logan*, 139 Ill. 2d at 233-34, 564 N.E.2d at 780.

■ Each district of the Illinois Appellate Court, including this one, has periodically cited the abuse of discretion standard as governing review of a trial court's ruling on a motion for summary judgment, often in the context of setting forth general legal principles,

but sometimes directly in analyzing and ruling on the appeal. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172, 474 N.E.2d 376, 380; *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 86, 508 N.E.2d 1201, 1208; *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361-62, 493 N.E.2d 372, 373; *Fitt v. City of Mattoon* (1991), 215 Ill. App. 3d 472, 574 N.E.2d 1275; *Stofer v. First National Bank* (1991), 212 Ill. App. 3d 530, 541, 571 N.E.2d 157, 165.) This is not the proper standard of review. (See, *e.g., Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 240-41, 494 N.E.2d 830, 833-34; *Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083, 1086.) The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct.

■ This case raises the question of whether the pleadings, depositions, admissions on file, and affidavits showed that a dangerous condition existed on defendant's property, the risks of which a child of Steven's age and maturity could not recognize. The parties agree the standard for a property owner's liability for injuries incurred by a minor on the owner's property is outlined in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, and discussed further in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177. The *Corcoran* court noted *Kahn* established the foreseeability of harm to children as the cornerstone of liability. Harm to children is sufficiently foreseeable when the owner knows or should know children frequent the property, and the child's injury is caused by a dangerous condition. (*Corcoran,* 73 Ill. 2d at 326, 383 N.E.2d at 180; *Kirby v. Macon Public School District No. 5* (1988), 169 Ill. App. 3d 416, 420, 523 N.E.2d 643, 646.) The Illinois Supreme Court reiterated this test in *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 564 N.E.2d 778. A court should also compare the expense or inconvenience to the property owner to remedy the condition against the risks to children. *Kahn,* 5 Ill. 2d at 625, 126 N.E.2d at 842.

■ A dangerous condition is "one which is likely to cause injury to the general class of children who, by reason of their immaturity, might be incapable of appreciating the risk involved." (*Corcoran* 73 Ill. 2d at 326, 383 N.E.2d at 180.) However, as the *Corcoran* court noted: "Even if an owner *** knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common condi-

tions." *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180; see also *Logan*, 139 Ill. 2d at 235-36, 564 N.E.2d at 787.

Plaintiffs argue the court erred in applying this standard to the facts surrounding Steven's injury. Defendant argues plaintiffs presented no evidence that it knew children frequented its property. In addition, defendant contends the evidence did not show a dangerous condition existed on its property.

Steven, his brother, and his friends played on the rock pile four to five times before he was injured on May 4. These occasions occurred within the month and a half preceding the May 4 accident. McKinney stated he saw children playing in the yard on only one occasion. Defendant correctly argues this evidence does not establish it knew children frequently played in the storage yard. However, under the analysis in *Kahn*, which involved an appeal from dismissal of a complaint, the court had also to determine if there was insufficient evidence to find defendant should have known children frequently played in the yard. (*Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 187; *Kirby*, 169 Ill. App. 3d at 420, 523 N.E.2d at 646.) Steven's parents testified they saw children playing in the yard frequently. His father saw children playing there frequently on nice days, and his mother saw children there only after work hours for Harristown Township employees. In addition, Shull testified that when he called McKinney to tell him about his son's injury, McKinney stated he knew children were playing in the yard. Although McKinney denied saying this to Shull, reasonable jurors could have disagreed about whom to believe.

The question of whether defendant knew or should have known children frequently played in the yard need only have been determined by a jury, however, if a factual issue also remained about whether a dangerous condition existed on defendant's property. Plaintiffs had to allege facts to show (1) the township knew or should have known children frequented its property *and* (2) a dangerous condition existed on the property. Without sufficient facts to raise an issue on each of these points, as a matter of law, plaintiffs could not prove the township was liable for Steven's injury. *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180.

■ The parties agree a property owner is not liable for injuries suffered by a child when risks related to the dangerous condition on the property should have been obvious to the child. Recognized obvious dangers include, *e.g.*, a tree used by high school students to climb a roof (*Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061); the danger posed to a 14-year-old by power lines (*Bonder v. Commonwealth Edison Co.* (1988), 168

Ill. App. 3d 80, 522 N.E.2d 227); and the danger posed to a five-year-old, and two seven-year-olds by a duck pond (*Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665).

Defendant contends the obvious danger doctrine applies to what occurred May 4 when Steven was injured, pointing to Steven's admission that he knew if he did not remove his hand as it neared a roller, the roller would injure his hand. Defendant argues this proves Steven exposed himself to a known, obvious risk which children are expected to appreciate and avoid.

■ Plaintiffs argue the gate constituted a dangerous condition. They correctly argue a dangerous condition need not be a defective condition. (*Smith v. Springman Lumber Co.* (1963), 41 Ill. App. 2d 403, 191 N.E.2d 256.) However, plaintiff must allege facts which show the condition in some way increased the risks which children would generally face. (*Corcoran*, 73 Ill. 2d at 328, 383 N.E.2d at 181.) Plaintiffs' allegations and other evidence did not establish this factor.

Defendant compares its gate to any gate or to the door of a home. Steven could have easily caught his finger in any door, or his hand in any gate. Defendant argues if it is liable for Steven's injuries, people with gates and ordinary doors would have to keep their doors and gates locked at all times to avoid liability. It cites *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243, as support for this view. In *Bonamie*, a five-year-old was injured when he fell through a glass door at defendant's residence. The court refused to hold defendant liable. It reasoned as follows: "A common door, located in a place where one would expect a door to be, is not, in and of itself, a dangerous agency. Almost any household fixture is capable of causing injury under certain conditions." *Bonamie*, 95 Ill. App. 3d at 350, 420 N.E.2d at 244.

Similarly, when a child swings on a gate, any gate is capable of causing injury. When the child knows of the risk and refuses to avoid the risk, the property owner should not be responsible for injuries suffered by the child. Steven's parents told him not to play in the township's yard. In addition, Steven testified that while he was swinging on the gate, he knew he could injure his hand if it became lodged under the roller.

■ Plaintiffs contend this testimony should not be construed to mean Steven fully understood the consequences of riding the gate. However, an obvious risk is not limited to circumstances where the child knows the full extent of injuries to which he might be exposed by ignoring risks associated with a known danger. Steven may not have known the extent of treatment his injury would require if his

hand was lodged in the roller. It was, however, obvious to Steven he would injure his hand if he did not remove it before the roller approached. The risks posed to Steven by the township's gate were obvious and known by him.

Plaintiffs correctly argue an obvious risk is actionable where surrounding circumstances enhance the risk to a child. The *Corcoran* court ruled a municipality was not liable for injury to a two-year-old who fell into a drainage ditch. It noted, however, that the municipality may have been liable for failing to fence in the ditch if, for example, the sides of the ditch were unnoticeable, extremely steep, or the ditch was filled with debris. *Corcoran*, 73 Ill. 2d at 328, 383 N.E.2d at 181.

Other surrounding circumstances which courts have concluded support finding a dangerous condition existed on a property include, *e.g.*, the proximity of a sandpile to railroad tracks, where defendant knew children played on the sandpile (*Halloran v. Belt Ry. Co.* (1960), 25 Ill. App. 2d 114, 166 N.E.2d 98); a ladder extended over an open stairway in a building under construction where a four-year-old was injured (*Trobiani v. Racienda* (1968), 95 Ill. App. 2d 228, 238 N.E.2d 177 (finding complaint stated a good cause of action to recover for injuries to child, rejecting argument on appeal from denial of petition to vacate default judgment)); and an unused fuel tank located close to a tree which defendant knew children used to climb the tree (*Smith v. Springman Lumber Co.* (1963), 41 Ill. App. 2d 403, 191 N.E.2d 256).

Defendant argues these circumstances are distinct from the facts and circumstances surrounding Steven's injury. It contends the only circumstance of which plaintiffs complain is that the gate remained unlocked. Defendant is correct. *Halloran, Trobiani,* and *Springman Lumber* each involved an interaction between two or more conditions which existed on defendant's property, or a condition which defendant clearly knew about and did not remedy. In this case, plaintiffs only contend that the gate should have been secured or locked. Plaintiffs do not, however, allege the unlocked gate interacted with some other factor to increase the risk to Steven or to other children. Steven knew about the danger in keeping his hand on the gate when the rollers approached. He had ridden the gate five to six times before his injury occurred. Each of these times Steven knew to remove his hand. Steven clearly knew riding the gate was dangerous. Defendant had no duty to protect him from such an obvious risk.

Plaintiffs contend *Andrews v. General Contracting Co.* (1962), 37 Ill. App. 2d 131, 185 N.E.2d 354, is most similar to circumstances surrounding Steven's injury. In *Andrews,* the court upheld a jury verdict in favor of a child injured in an unfenced storage yard where defend-

ant argued the circuit court should have granted its motions for directed verdict or for judgment *n.o.v.* However, as defendant notes, the children in *Andrews* played extensively in the yard and it was clear defendant knew this. The children had even built clubhouses in the yard with lumber from a piece of adjacent property, or with scrap lumber. (*Andrews*, 37 Ill. App. 2d at 133, 185 N.E.2d at 356.) The court reasoned defendant could have remedied the danger to children by simply erecting a fence. (*Andrews*, 37 Ill. App. 2d at 135-36, 185 N.E.2d at 357.) Plaintiffs in the present case contend this means defendant would also have to lock the gate to keep the children from entering. For this reason, plaintiffs contend, as in *Andrews*, defendant could have remedied the danger to children by locking the gate.

The *Andrews* court upheld the verdict against defendant noting that defendant had control of an unfenced area littered with machinery and other items attractive to children of tender years, knew or should have known children frequented the premises, and knew or should have known of the dangerous condition on the premises resulting from the refuse and debris strewn about the yard. Defendant argues the verdict there was upheld, in part, because of the refuse and debris in the yard, as an additional circumstance which posed a greater risk to children (*Andrews*, 37 Ill. App. 2d at 135, 185 N.E.2d at 357), whereas plaintiffs in this case provided no evidence to show what additional circumstances existed on defendant's property which posed an additional risk of danger to children. We conclude, however, that "additional circumstances" is not the focus of distinction between *Andrews* and the case before us; Steven's appreciation of the danger makes the obvious danger doctrine applicable and made the granting of summary judgment appropriate.

Plaintiffs also argue an additional factor the court should have considered is that because defendant knew children were present, it had a duty to remedy potentially dangerous conditions. In addition, the cost to defendant to do so would have been minimal. Defendant merely had to buy a padlock and secure the gate when leaving. These additional considerations and arguments do not overcome plaintiffs' failure to provide evidence the gate presented anything other than a condition which Steven knew was dangerous. For plaintiffs' argument that the gate posed greater than an ordinary, obvious risk to children to survive summary judgment, they had the burden to allege sufficient facts to describe the relevant circumstances. (*Corcoran*, 73 Ill. 2d at 328, 383 N.E.2d at 181.) Plaintiffs allege in count III that defendant created the unreasonable risk of harm to children by failing to lock or to secure the gate to protect children from being injured.

Nothing in the record shows how this risk was any greater than the risk which Steven knew of, which was that the roller could injure his hand.

Plaintiffs also suggest perhaps the gate was defective. They argue the court erroneously accepted defendant's argument the gate was not defective. However, plaintiffs again presented no evidence to the contrary. In fact, Steven testified there was nothing wrong with the gate when he swung on it.

It is unfortunate whenever a child is injured while playing. However, holding the property owner liable is not always appropriate. A child's parents are primarily responsible to ensure the child does not participate in activity which could be dangerous. *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79, 219 N.E.2d 483, 486; *Corcoran*, 73 Ill. 2d at 327, 383 N.E.2d at 180; *Strode*, 206 Ill. App. 3d at 404, 564 N.E.2d at 879.

■ As a matter of law, the gate on which Steven was injured was not a dangerous condition from which the township had to protect children of Steven's age and maturity. Summary judgment in favor of defendant, Harristown Township, was proper. Plaintiffs did not allege facts or place before the court evidence sufficient to allow the case to proceed to trial. They did not allege facts sufficient to show the gate constituted a dangerous condition on the township's property. Nor did they show why the gate posed additional risks other than the obvious risk which Steven knew about, *i.e.*, the roller could injure his hand.

We affirm the trial court's summary judgment in favor of defendant, Harristown Township.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.